UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Chesapeake Exploration, LLC, et al., ) | CASE NO. 5:12CV188 |
| ) | |
| Plaintiffs, ) | JUDGE JOHN R. ADAMS |
| ) | |
| v. ) | |
| ) | |
| Catlett Quality Plumbing & Heating, ) | |
| Inc, et al., ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| Defendants | |

This matter appears before the Court on Plaintiffs' motion for summary judgment (Doc. 38), Defendants' motion to dismiss (Doc. 51), and Plaintiffs' motion to schedule oral argument on their motion for summary judgment (Doc. 58). The motion for summary judgment is GRANTED. The motion to dismiss is DENIED. The motion to schedule oral argument is DENIED AS MOOT.

I. **Factual Background and Procedural History**

The substantive facts giving rise to this matter are largely undisputed by the parties. Plaintiffs Chesapeake Exploration, LLC and CHK Utica, LLC (collectively "Chesapeake") purchased oil and gas leases from Anschutz Exploration Company. Defendants are numerous business and individuals that had entered into these leases with Anschutz. The parties are before the Court because they cannot agree on the interpretation and effect of one provision common to all of the leases. Specifically, the provision reads as follows:

> **14. PREFERENTIAL RIGHT TO RENEW.** If, at any time during the primary term hereof, or within one (1) year from the expiration, cancellation or termination of this Lease, Lessor receives an acceptable, bona fide third-party offer to lease the Leasehold, in whole or part, Lessor shall promptly provide the Lessee, in writing, of all of the verifiable particulars of such offer. Lessee shall

1

> have thirty (30) days from the receipt thereof to advise Lessor, in writing, of its agreement to match said third-party offer as to all terms and consideration; immediately thereafter, Lessor and Lessee shall take all cooperative steps necessary to effectuate the consummation of said transaction and the survival of said transaction through any statutorily mandated right of cancellation thereof. Any lease or option to lease the Leasehold, in whole or part, granted by Lessor in contravention of the purposes of this paragraph shall be deemed null and void.

Doc. 38-3 at 4.

For the purposes of the pending motion, it appears that the parties agree that Defendants have received acceptable, bona fide offers from a third party to the lease their property.[1]  It also appears that the parties agree that Chesapeake has declined to match these offers.  The parties, however, sharply disagree over the effect of Chesapeake's decision.  The Court now resolves that disagreement.

## II.    Law and Analysis

### A.  Summary Judgment Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R. Civ.P. 56(a).  The initial burden of showing the absence of any "genuine issues" belongs to the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing former Fed.R. Civ.P. 56(c)).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*.  (quoting former Fed.R. Civ.P. 56(c)).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable

---

[1] That is not to say that Chesapeake has agreed that Defendants have properly invoked this provision or that applies to the specific offers relied upon by Defendants.

2

evidentiary burdens. *Id*. at 252. Moreover, the Court must view a summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc*., 369 U.S. 654, 655 (1962).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-moving party. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dep't of Transp*., 53 F.3d 146, 150 (6th Cir. 1995). Moreover, Fed.R. Civ.P. 56(e) states as follows:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> …
>
> (2) consider the fact undisputed for purposes of the motion; [or]
>
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it[.]

Accordingly, summary judgment analysis asks whether a trial is necessary and therefore is appropriate when there are no genuine issues of fact. *Anderson,* 477 U.S. at 250.

### B. Contract Interpretation

"The role of courts in examining contracts is to ascertain the intent of the parties." *Savedoff v. Access Group, Inc.,* 524 F.3d 754, 763 (6th Cir. 2008), (citing *City of St. Marys v. Auglaize Cty. Bd. of Commrs.,* 875 N.E.2d 561, 566 (Ohio 2007). Where the terms in a contract are not ambiguous, courts are constrained to apply the plain language of the contract. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm,* 652 N.E.2d 684, 686 (Ohio 1995). In this specific subject matter area, Ohio courts have noted as follows:

> "The rights and remedies of the parties to an oil or gas lease must be determined by the terms of the written instrument [.]" *Harris v. Ohio Oil Co.*, 57 Ohio St.

118, 129 (1897). "Such leases are contracts, and the terms of the contract with the law applicable to such terms must govern the rights and remedies of the parties." *Id.* The construction of written contracts and instruments of conveyance is a matter of law that this court reviews de novo. *Bath Twp. v. Raymond C. Firestone Co.*, 140 Ohio App.3d 252, 256 (2000).

*Kramer v. PAC Drilling Oil & Gas, LLC*, 197 Ohio App.3d 554, 558 (2011).

Ohio courts have further explained contract interpretation:

Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument. *Shifrin v. Forest City Enterprises*, 64 Ohio St.3d 635, 638. The court must read words and phrases in context and apply the rules of grammar and common usage. *Keller v. Foster Wheel Energy Corp.*, 163 Ohio App.3d 325. The rules of grammar require "dependent clauses [to] modify some part of the main clause." *Id.*, citing *Bryan Chamber of Commerce v. Bd. of Tax Appeals* (1966), 5 Ohio App.2d 195. *See, also, Carter v. Youngstown* (1946), 146 Ohio St. 203, 209 ("referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent.")... Moreover, contracts must be interpreted in a way that renders all provisions meaningful and not mere surplusage. *Sherwin-Williams Co. v. Travelers Casualty & Surety Co.*, Cuyahoga App. No. 82867, 2003-Ohio-6039.

With regard to the law pertaining to rights of first refusal, we note that a right of first refusal constitutes a promise to present offers made by third parties to the promisee in order to afford the promisee the opportunity to match the offer. *Latina v. Woodpath Development Co.* (1991), 57 Ohio St.3d 212.

*Lo-Med Prescription Servs., Inc. v. Eliza Jennings Group*, 200y WL 1290078, at *3-4 (Ohio Ct. App. May 3, 2007).

Despite Ohio law's clarity on the law surrounding contract interpretation, the parties' proposed constructions of the Preferential Right to Renew provision are vastly different. This Court, therefore, will review the entirety of the provision, including those portions in which the parties appear to be in agreement.

1) **14. PREFERENTIAL RIGHT TO RENEW.**

Chesapeake contends that the title of this paragraph should assist in the Court's review of the matter. Defendants, however, contend that the Court should not place any weight on this

4

section's title. In support, Defendants rely upon *Worth v. Aetna Cas. & Sur. Co.*, 32 Ohio St.3d 238, 241 (1987). However, *Worth* does not stand for the proposition that the Court should disregard a heading. *Worth* notes as follows: "The absence of an express 'indemnification' provision in the agreements is not determinative since the nature of a given provision is determined not by the label the parties give it, but rather by the legal effect of the provision as expressed by the parties in their agreement." *Id.* Thus, the *Worth* court noted that the *lack* of a heading was not dispositive. It did not hold that headings were irrelevant or should be ignored. Moreover, while the parties were free to negotiate, they did not negotiate a provision that stated that the headings were inserted for mere convenience and therefore should not be used in determining the parties' intent. *See, e.g., Sunoco, Inv. v. Toledo Edison Co.*, 129 Ohio St.3d 397, 402 (2011). Accordingly, this Court is bound to give meaning to *all* the words chosen by the parties and will review the heading, if necessary, to interpret this provision.

**2) If, at any time during the primary term hereof, or within one (1) year from the expiration, cancellation or termination of this Lease, Lessor receives an acceptable, bona fide third-party offer to lease the Leasehold, in whole or part, Lessor shall promptly provide the Lessee, in writing, of all of the verifiable particulars of such offer.**

The Court finds nothing ambiguous about the above provision. The provision allows Defendants to present bona fide offers to Chesapeake from the first day after a lease is signed until up to one year beyond the expiration of the lease.

**3) Lessee shall have thirty (30) days from the receipt thereof to advise Lessor, in writing, of its agreement to match said third-party offer as to all terms and consideration;**

Similarly, the above provision grants Chesapeake thirty days to match any offer received and presented by Defendants. The provision is unambiguous and requires no interpretation.

5

**4) immediately thereafter, Lessor and Lessee shall take all cooperative steps necessary to effectuate the consummation of said transaction and the survival of said transaction through any statutorily mandated right of cancellation thereof.**

The parties give significantly different interpretations to the above language. For that matter, not even the different groups of Defendants can agree on its meaning. The Court will review each of the parties' proposed interpretations.

First, the Court finds that despite the argument of a group of Defendants, the above provision is not a most-favored-nation clause. Most-favored-nation clauses grant a contracting party the absolute right to receive a higher benefit if that benefit is given to another similarly situated party contracting with the same entity. *See, e.g., Sunoco, Inc. v. Toledo Edison Co.*, 129 Ohio St.3d 397 (2011). However, any such interpretation herein is expressly foreclosed by other provisions in the leases at issue. Specifically, section 5(L) of the lease provides that "Lessor will not seek to amend or modify the lease payments [or] seek additional consideration… based upon [] any differing terms which Lessee has or will negotiate with any other lessor/oil and gas owner." Doc. 38-3 at 3. Thus, any assertion that the paragraph in dispute is a most-favored-nations clause cannot withstand scrutiny.

Strangely, this same group of Defendants contends that Chesapeake cannot rely on section 5(L) of the lease because these Defendants are not seeking higher payments based upon any offer by Chesapeake. However, this is precisely the conduct that would be necessary – higher offers to other by Chesapeake – to invoke a most-favored-nations clause. Accordingly, the Court finds no merit in these arguments.

Finally, the parties again offer sharply different views on the meaning of the following: "shall take all cooperative steps necessary to effectuate the consummation of said transaction."

Chesapeake contends that the above is only applicable if they have agreed to match the bona fide offer.  In contrast, Defendants contend that the above provision requires Chesapeake to cooperate in closing *any* transaction -- whether it be renewing the lease or terminating it.  The Court now examines that precise provision.

The Court finds that the above provision is unambiguous.  Despite numerous attempts by Defendants to muddy the waters, the entirety of the paragraph above is entitled "preferential right to **renew**."  Defendants have gone on at length to argue that "renew" can have any number of meanings.  In particular, Defendants have relied upon these differing meanings to argue against any temporal limitations on their right to receive bona fide offers.  However, in so arguing, Defendants have missed the vital importance of the term "renew" in the context of this provision – one can only renew something that is currently in existence.  Thus, when the provision speaks of "consummation of said transaction," the sole logical interpretation is that "said transaction" is the **renewal** expressly spoken of in the title of the provision.

A group of Defendants also contends that the choice to use "immediately thereafter" by the parties evidences an intent that the lease either be renewed or terminated immediately.  However, Defendants again seek to add language to the lease.  The lease provides that "said transaction" will be immediately consummated.  It says nothing about said transaction becoming *effective* immediately.  There is a vast distinction between the parties entering immediately into a lease renewal and that renewal becoming effective immediately.  The lease contains no terminology to suggest that any agreed-upon renewal would become effective immediately.  Therefore, the proffered interpretation from Defendants cannot be utilized by the Court.

Defendants also argue at length the above provision is ambiguous and therefore must be construed against the drafting party.  In so doing, Defendants ignore that their proffered

interpretation runs afoul of numerous rules of contract interpretation.

First, in order to adopt Defendants' proffered interpretation, the Court would need to add words to the lease. The lease does not contain a termination provision. There is no wording in any portion of the lease that discusses terminating the lease. However, Defendants would have the Court infer that "consummation of said transaction" is the equivalent of a termination provision. However, this conclusion can only be reached by ignoring the plain language utilized by the parties in paragraph 14. To reach this conclusion, the provision would need to read "consummation of said transaction or termination of this lease." Contract interpretation forbids adding terms to the lease.

Furthermore, Defendants' proffered interpretation is at odds with other provisions within the lease. Section 3 of the lease is titled "Lease Term" and provides as follows:

> This Lease shall remain in force for a primary term of three (3) years from … (the "effective date") and for as long thereafter as prescribed payments are made, or for as long thereafter as operations are conducted on the Leasehold in search of or production of oil, gas, or their constituents, or for as long as a well capable of production is located on the Leasehold or lands pooled or unitized therewith, or for as long as extended by provision herein. If after the primary term the last producing well on the Leasehold or lands pooled or unitized therewith is plugged and abandoned, the Leasehold will remain under Lease for an additional period of one year from the date of plugging and abandonment, subject to the payment of delay rental.

Doc. 38-3 at 2. In turn, section 4 of the lease provides Chesapeake with the option to extend the primary term of the lease for an additional three years. Defendants, however, contend that section 14 may serve to terminate the lease *at any time*. Neither section 3 or 4 of the lease references section 14, nor does section 14 reference section 3 or 4. Thus, Defendants' proffered interpretation would serve to render meaningless the mandatory language, "shall remain in force," in section 3. Instead, again, Defendants' interpretation would add language to the lease. Defendants' interpretation would result in section 3 reading "the lease shall remain in force for a

8

primary term of three (3) years **unless Lessor receives a bona fide offer and Lessee declines to match said offer**." However, that is not the language negotiated by the parties, and the Court declines to add words to the parties' agreement.

Finally, much argument is made that discusses section 14 as a "fair market value" provision. Defendants detail how this terminology was commonly used when negotiating the leases at issue. However, the term is nowhere found in the lease. Accordingly, reliance on that term to interpret the unambiguous lease provision would be error.

**5) Any lease or option to lease the Leasehold, in whole or part, granted by Lessor in contravention of the purposes of this paragraph shall be deemed null and void**.

Again, this final provision in section 14 is unambiguous. If Defendants enter into a lease or option to lease that violates Chesapeake's rights in the current lease or its right to renew, the new lease or option is void.

Based upon all of the above, the Court finds no ambiguity in the section 14 of the lease. Section 14 grants Chesapeake a right to match a bona fide offer and renew the lease. It does not ever speak of depriving Chesapeake of its *current* rights in the lease. It is clear that Chesapeake's choice to not match a bona fide offer does nothing other than allow the current lease to run its course. As such, Chesapeake's motion for summary is GRANTED.

Also pending before the Court is a motion by a group of Defendants seeking to dismiss this matter for failure to join an indispensable party. The Court finds no merit in that motion.

The Sixth Circuit has explained the Court's analysis in this area of law as follows:

> We use a three-part test to determine whether a party is indispensable under Rule 19. "First, the court must determine whether the person or entity is a necessary party under Rule 19(a)." *Glancy*, 373 F.3d at 666. "Second, if the person or entity is a necessary party, the court must then decide if joinder of that person or entity will deprive the court of subject matter jurisdiction." *Id*. "Third, if joinder is not feasible because it will eliminate the court's ability to hear the case, the court must

>analyze the Rule 19(b) factors to determine whether the court should in equity and good conscience dismiss the case because the absentee is indispensable." *Id.* (citation and internal quotation marks omitted). Thus, a person or entity "is only indispensable, within the meaning of Rule 19, if (1) it is necessary, (2) its joinder cannot be effected, and (3) the court determines that it will dismiss the pending case rather than proceed in the case without the absentee." *Id*. (citing 4 Moore's Fed. Practice § 19.02[3][c], at 19–22).
>
>A party is necessary under Rule 19 if either (1) in the party's absence, the court cannot accord complete relief among existing parties, Fed.R.Civ.P. 19(a)(1)(A), or (2) if the party claims an interest relating to the subject of the action and disposing of the action in the party's absence may (i) as a practical matter impair or impede the party's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring multiple or otherwise inconsistent obligations because of the interest, Fed.R.Civ.P. 19(a)(1)(B).

*Laethem Equipment Co. v. Deere & Co.*, 2012 WL 2149755, at *4 (6th Cir. June 13, 2012).

In their motion, Defendants contend that Total E&P USA, Inc. ("Total") is an indispensable party that must be joined to this suit.  Specifically, Defendants contend that Total holds a majority interest in most of the leases at issue herein.  In response, Chesapeake has asserted that such a statement is factually inaccurate and legally irrelevant.

First, Chesapeake asserts that Total was assigned 89% of the interest in the leases that was held by Chesapeake Exploration, LLC.  Chesapeake then clarifies that Chesapeake Exploration, LLC only held a minority interest in the leases to begin with and that the other plaintiff in this matter, CHK Utica, LLC, held a majority interest in those leases and still does to this date.  Chesapeake asserts that Total does not own more than a 25% interest in any one of the leases.  Furthermore, Chesapeake asserts that Total is fully aware of this litigation and has declined to become involved.

With respect to whether Total is a necessary party, it is clear that disposing of this action will not impair Total's ability to protect its interest.  First, as a majority holder in the leases at issue, Chesapeake and CHK Utica are aligned with Total and will protect its interests.

Furthermore, as an assignee, Total would have direct recourse against the Chesapeake entities in the event that this litigation impacted the value of the assignment.  Accordingly, under that prong of the analysis, Total is not a necessary party.

It is also unclear as to how Defendants could be subject to inconsistent obligations if Total is not joined.  The record is now clear that Total is fully aware of this litigation and has declined to become involved in it.  Thus, it is quite clear that a subsequent suit by Total – in the event that the leases are somehow impaired by the results of this suit – would not be well taken.  In short, along with numerous factual inaccuracies, the motion to dismiss falls well short of demonstrating that Total is a necessary party, let alone an indispensable one.

Finally, the Court would note that much of the motion and reply brief are dedicated to allegations that Chesapeake concealed Total's interests in the leases at issues.  The pleadings tend to utilize inflammatory language and attempt to impute an improper motive to Chesapeake's alleged concealment.  None of those arguments or alleged facts are relevant to the Court's analysis of the motion and the Court can only conclude that they were written in a deliberately inflammatory manner to attempt to sway the Court.  They have not.  The motion to dismiss is DENIED.

### III. Conclusion

Chesapeake's motion for summary judgment on the issue of section 14 of the leases is GRANTED.  Defendants' motion to dismiss is DENIED.

IT IS SO ORDERED.

DATE: October 30, 2012              */s/ John R. Adams*_____
                                    Judge John R. Adams
                                    UNITED STATES DISTRICT COURT